BRYANT, Judge.
Where the adjudication order includes sufficient findings of fact supported by clear, cogent, and convincing evidence to conclude that the children were neglected, we affirm the trial court's order.
Respondents are the biological parents of "Michael" and "Michelle"[1] (collectively, "the children"), who are twins born in December 2009. The Alleghany County Department of Social Services ("DSS") became involved with respondents due to their issues with drug use and domestic violence. On 6 November 2012, respondents consented to an adjudication that the children were neglected. By order entered 8 May 2013, custody of the children was returned to respondent-mother and DSS was relieved of further efforts to assist the family.
On 24 November 2015, DSS received a report that the children had been sexually abused. DSS referred the children to the Children's Advocacy Center of the Blue Ridge, where child medical exams ("CMEs") were performed on each child. During the CMEs, both children disclosed that they had been sexually abused by their half-brother, "RJ." In addition, Michelle disclosed sexual abuse by respondent-father, stating that he "sucked on her privates." Michelle also disclosed that she had seen respondents "smoke weed and sniff pills up a straw" and that respondent-father had allowed her to smoke marijuana. DSS and respondent-mother entered into a safety plan, whereby she agreed to not allow respondent-father to have contact with the children.
Thereafter, DSS received a report that respondent-father bonded out of jail on 24 February 2016 and was residing with the family. A DSS social worker went to the home and observed respondent-father's boots and suitcase. Respondent-mother denied that respondent-father was living in the home, but refused to allow the social worker to access all of the rooms in the home in order to verify her claim.
On 25 February 2016, DSS filed petitions alleging the children were neglected juveniles. DSS was granted non-secure custody of the children and placed them with a foster parent. Upon entering DSS custody, the children disclosed that respondent-father was present in their home.
The petitions were heard on 29 March 2016. On 13 May 2016, the trial court entered an order adjudicating the children neglected. Respondents separately filed timely notices of appeal.
_________________________
On appeal, (I) respondent-father argues that the trial court erred by adjudicating his children neglected, and (II) respondent-mother also appeals, although counsel for respondent-mother has filed a no-merit brief on her behalf pursuant to N.C. R. App. P. 3.1(d) (2017).
I
Respondent-father argues that the trial court erred by adjudicating his children neglected. He contends that certain portions of the trial court's findings were based upon events beyond the scope of the allegations in the petition and/or were not supported by clear and convincing evidence, and that the trial court's findings do not ultimately support its conclusion that the children were neglected. We disagree.
"The role of this Court in reviewing a trial court's adjudication of neglect ... is to determine '(1) whether the findings of fact are supported by "clear and convincing evidence," and (2) whether the legal conclusions are supported by the findings of fact[.]' " In re T.H.T. , 185 N.C. App. 337, 343, 648 S.E.2d 519, 523 (2007) (quoting In re Gleisner , 141 N.C. App. 475, 480, 539 S.E.2d 362, 365 (2000) ). "If such evidence exists, the findings of the trial court are binding on appeal, even if the evidence would support a finding to the contrary." Id . (citing In re McCabe , 157 N.C. App. 673, 679, 580 S.E.2d 69, 73 (2003) ).
A. Finding of Fact No. 8
Respondent-father first argues that the trial court's Finding of Fact No. 8 was improper because it was "not based on allegations about which the parents had notice" and unsupported by the evidence presented at the adjudication hearing. The court's finding was as follows:
On November 24, 2015, the Petitioner received a report of sexual abuse on the minor children. Based on this, Social Worker Rebecca Jones referred the children to the Children's Advocacy Center of the Blue Ridge, where a Child Medical Evaluation (CME) was performed on both children. A copy of the CME was introduced in evidence at trial, and Beth Browning (MSN, FNP-C, SANE-A, SANE-P) testified to her findings from the evaluation. Both minor children testified to extensive sexual abuse by a family member named "RJ", who is the Respondent Father's son. [Michael] disclosed that RJ grabbed his penis, licked his penis, and touched his penis numerous times. [Michael] also disclosed that RJ "sucked on his sister's coochy." [Michelle] disclosed similar abuse by RJ. In addition, [Michelle] disclosed sexual abuse by her father ... specifically that he "sucked on her privates." These events of sexual abuse occurred in the home of ... the Respondent Father's sister. [Michelle] also disclosed that she has seen her mother, father, and [respondent-father's sister] "smoke weed and sniff p[i]lls up a straw before", and that her father had let her smoke marijuana.
Pursuant to N.C. Gen. Stat. § 7B-402(a), a petition alleging abuse, neglect or dependency "shall contain the name, date of birth, address of the juvenile, the name and last known address of each party as determined by G.S. 7B-401.1, and allegations of facts sufficient to invoke jurisdiction over the juvenile." N.C. Gen. Stat. § 7B-402(a) (2015). This Court has explained that
the Rules of Civil Procedure are applicable to Chapter 7B proceedings. Rule 8 requires that a pleading contain "[a] short and plain statement of the claim sufficiently particular to give the court and the parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved showing that the pleader is entitled to relief[.]" Under the liberal standard of notice pleading, a claim is adequate if it gives sufficient notice of the events that produced the claim to enable the adverse party to understand the complaint's nature and basis and to file a responsive pleading.
In re L.T.R. & J.M.R. , 181 N.C. App. 376, 389, 639 S.E.2d 122, 130 (2007) (citations omitted). The neglect petitions in this case alleged that the children were neglected because they "live[d] in an environment injurious to the juvenile's welfare." They then included the following allegations[2] :
Specifically, on or about 02/25/2016: Alleghany County DSS is currently working with the child through an In Home Service Plan. Alleghany Co. DSS received some information that father was released from jail on 2/24/2016 and that he is living in the home with the child and her mother. There is a previous court order stating that the father is not allowed to have any visits with the child. On 11/24/15 the child was taken for a forensic interview where the child disclosed sexual abuse with one perpetrator being the child's father. The recommendations were that the child have no contact with reported offender. On 12/17/15 a safety assessment was developed with the mother that she agreed not to have the child around [respondent-father]. Social worker made an unannounced home visit today and SW observed [respondent-father]'s boots and suitcase and asked if [respondent-father] was in the home. [Respondent-mother] reported that he was not in the home but refused to let SW see in the bathroom. SW could not ensure the safety of the child.
Respondent-father contends that the petitions' reference to "02/25/2016" only put him on notice "of that limited 24 hour period, between his release and the removal of the children...." He argues that the allegations cannot support any examination of whether the children were sexually abused prior to that date. However, the trial court's finding substantially tracked the allegations in the petitions. Both the petitions and the finding explain the family's prior history with DSS, including the forensic interview where Michelle disclosed that respondent-father had sexually abused her. In both the petition and finding, this information was used to demonstrate why it was inappropriate for respondent-father to be staying with the family at the time the petition was filed. Since the petition specifically mentioned the forensic interview and sexual abuse allegations, respondent-father had sufficient notice that this evidence would be addressed at the adjudication hearing. Contrary to respondent-father's argument, the reference to "02/25/2016" in the petition does not preclude consideration of the events leading up to that date.
Respondent-father also argues that not all parts of Finding of Fact No. 8 were supported by clear and convincing evidence. Specifically, he asserts that there was insufficient evidence to support the portion of the finding that "erroneously portray[s] [respondent-father] as a sex offender and drug user." However, contrary to respondent-father's assertions, the trial court did not make a dispositive finding regarding the substance of the children's allegations. Instead, the findings merely reflect that these were the disclosures made by the children during their child medical evaluations. The fact that these disclosures were made was directly supported by evidence proffered at the adjudication hearing. Specifically, Elizabeth Browning, a nurse practitioner and sexual assault nurse examiner, testified that Michelle told her that respondent-father[3] "actually pulled her pants down and was sucking [her private area]." Nurse Browning subsequently read, without objection, from her report regarding Michelle's forensic examination, which stated that Michelle "disclosed that her mom and dad taught her to be nasty. That her mom and dad told her that boyfriends and girlfriends suck each other's privates." The report also indicated that Michelle stated "she'd seen her mom and dad and [another person] smoke weed and sniff pills up the straws in their noses, she disclosed that her daddy let her smoke weed before."
Respondent-father contends that these last two statements, which were made to another examiner and not Nurse Browning, should have been excluded as hearsay. However, since respondent-father did not object when these statements were introduced, he has waived any right to challenge their admission on appeal. See In re F.G.J., M.G.J. , 200 N.C. App. 681, 693, 684 S.E.2d 745, 753-54 (2009) (noting that when "no objection on hearsay grounds was made by either parent at trial[,] ... any objection has been waived, and the testimony must be considered competent evidence"). Nurse Browning's testimony regarding Michelle's disclosures to herself and others fully supports the challenged portions of the trial court's finding.
B. Neglect
Finally, respondent-father contends that the trial court's findings are insufficient to support its conclusion that the children were neglected. A neglected juvenile is defined, in relevant part, as "[a] juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; ... or who lives in an environment injurious to the juvenile's welfare...." N.C. Gen. Stat. § 7B-101(15) (2015). "In determining whether a juvenile is a neglected juvenile, it is relevant whether that juvenile ... lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." Id .
Respondent-father argues that because the trial court did not find that respondent-father was staying in the children's home at the time of the filing of the petition, the trial court could not properly conclude that the children lived in an injurious environment. However, the trial court's unchallenged finding established the following:
9. ... Pursuant to a current Court Order, Respondent Father is not allowed any visitation with the minor children. Social workers and law enforcement officers made an unannounced visit to the home and observed some of Respondent Father's belongings at the residence. Respondent Mother allowed DSS into the home, with the exception of the bathroom, to which she refused to allow the Petitioner access. Therefore, the Petitioner could not insure (sic) the safety of the children.
In light of Michelle's disclosures above, this finding regarding respondent-mother's failure to allow DSS to verify that respondent-father was not in the home after observing the presence of his belongings in the home justified the trial court's conclusion that the children lived in an injurious environment. Respondent-mother's actions made it impossible for DSS to verify that she was in compliance with the previously established court order which had been entered for the safety of the children. Thus, the court properly concluded that the children were neglected.
II
Counsel for respondent-mother has filed a no-merit brief on her behalf pursuant to N.C. R. App. P. 3.1(d) stating that "after a conscientious and thorough review of the record on appeal, ... it is counsel's conclusion and opinion that the record contains no issue of merit on which to base an argument for relief and the appeal would be frivolous." Counsel asks this Court to conduct an independent review of the record for possible error. Counsel has also demonstrated that he has advised respondent-mother of her right to file written arguments with this Court and provided her with the documents necessary to do so. Respondent-mother has not filed her own written arguments.
Consistent with the requirements of Rule 3.1(d), counsel directs our attention to whether the trial court's findings were supported by clear and convincing evidence, whether the findings supported the court's conclusion that the children were neglected, and whether the court's dispositional requirements complied with N.C. Gen. Stat. § 7B-904 (2015). However, counsel acknowledges that these issues do not provide a meritorious basis for appeal.
After careful review, we are unable to find any possible prejudicial error by the trial court. As previously determined in reviewing respondent-father's arguments, the adjudication order includes sufficient findings of fact, supported by clear, cogent, and convincing evidence, to conclude that the children were neglected. Moreover, the court's dispositional requirements fully complied with N.C. Gen. Stat. § 7B-904. Accordingly, we affirm the trial court's order.
AFFIRMED.
Report per Rule 30(e).
Judges DAVIS and TYSON concur.

Pseudonyms are used throughout to protect the identities of the minor children and for ease of reading. N.C. R. App. P. 3.1(b) (2017).

Although DSS filed separate petitions for each child, the allegations in each petition were the same.

During her disclosure, Michelle referred to her father as "Robbie." Nurse Browning specifically testified that "Robbie was the father."