684 S.E.2d 745 (2009)
In the Matter of F.G.J., M.G.J.
No. COA09-522.
Court of Appeals of North Carolina.
November 3, 2009.
*747 Terry F. Rose, Smithfield, for petitioner-appellee.
Susan J. Hall, Fayetteville, for respondent-appellant mother.
Richard E. Jester, Louisburg, for respondent-appellant father.
James W. Carter, Smithfield, for appellee guardian ad litem.
GEER, Judge.
Respondent mother and respondent father appeal from the trial court's orders terminating their parental rights to F.G.J. ("Fred") and M.G.J. ("Molly").[1] The trial court concluded that grounds existed to terminate respondents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) and § 7B-1111(a)(7) (2007). We agree with respondents' arguments that the trial court's findings of fact are inconsistent with its conclusion under N.C. Gen.Stat. § 7B-1111(a)(7) that they abandoned their children. We, therefore, reverse the order below to the extent it rests on § 7B-1111(a)(7). As to N.C. Gen.Stat. § 7B-1111(a)(2) (willful failure to make reasonable progress in correcting the conditions that led to the removal of the children from parents' custody), we hold that the trial court failed to make sufficient findings of fact on that ground to permit appellate review and, therefore, remand for further findings of fact.

Facts
The Johnston County Department of Social Services ("DSS") became involved with the family in December 2004 when it received a report of an incident of domestic violence between respondents in which Fred was injured. The report indicated that respondents fought continually, that respondent father consumed alcohol excessively, and that there were times when there was no food in the house. Upon investigation, DSS found the home to be cluttered with dirty clothing, old food, and garbage. Respondent father was intoxicated at the time. Respondent mother was seven to eight months pregnant with Molly.
On 8 December 2004, respondents entered into a Safety Assessment with DSS that addressed concerns about domestic violence, substance abuse, and provision of food and diapers for the children. On 8 February 2005, respondents entered into a second Safety Assessment after it had been reported that the couple was still engaging in domestic violence, and respondent father was still regularly abusing alcohol to the point of intoxication.
On 25 February 2005, respondents entered into a Home Services Agreement with DSS in which respondent father agreed to participate in HALT, a domestic violence education program; to obtain a substance abuse assessment and follow any recommendations; to complete a 60-hour alcohol treatment course, as previously ordered in connection with a driving while impaired conviction; and to attend parenting classes. Respondent mother agreed to attend domestic violence classes for victims. In addition, both parents agreed to maintain a safe and clean home for the juveniles and to demonstrate knowledge gained through their classes.
On 21 March 2005, DSS received another report of neglect. Upon investigation, DSS determined that respondent mother had been admitted to Johnson Memorial Hospital with a laceration to her arm so severe that an artery had been severed and surgical repair was necessary. Respondent mother claimed that she had become angry, "snapped," and punched a medicine cabinet. Based on this injury and respondent mother's statement, in addition to the history of domestic violence between the parents, DSS requested that the parents place the children with an appropriate caretaker.
The parents and the children moved in with respondent mother's great aunt and her husband. A Safety Assessment was executed by respondents, the great aunt and her husband, and DSS in which respondents *748 agreed that the children would not be in their presence unsupervised. While living with the great aunt and her husband, respondents engaged in at least three episodes of domestic violence in the great aunt's and husband's presence. Because of the continued domestic violence, respondents were asked to leave the home on 8 April 2005. The children, however, remained in the care of the great aunt and her husband. At that time, the Home Services Agreement was updated, and respondent mother agreed to obtain mental health treatment, although she had missed two already scheduled appointments.
On 4 May 2005, a DSS social worker noticed that respondent mother had lacerations on her forearms. Respondent mother refused to go to the hospital and told the social worker that she could cut herself if she wanted to when she got mad. DSS arranged for a psychological assessment of respondent mother that resulted in recommendations that respondent mother attend Dialectic Behavior Therapy as well as stress and anger management groups. DSS arranged and paid for parenting classes, but respondent mother attended only three sessions before she concluded that she did not need the classes and stopped attending. In April 2005, respondent mother began attending domestic violence classes.
On 5 June 2005, the Town of Selma Police Department was notified of a physical altercation between respondents and another man and woman. The Police Department reported that respondent mother was intoxicated on at least two occasions that day.
On 28 June 2005, DSS filed neglect petitions for both Fred and Molly, alleging that respondents continued to engage in domestic violence, that respondent mother refused to fully participate in recommended services, and that respondent father had failed to demonstrate any learned behavior from his attendance at a domestic violence program.
The trial court adjudicated Fred and Molly to be neglected in an order filed 9 August 2005. Although DSS had custody of the children, the court authorized their placement with the great aunt and her husband. On 28 September 2005, however, the great aunt requested that the children be removed from her home. On 5 October 2005, following completion of a home study, the trial court, during a permanency planning hearing, ordered that the children be placed in the home of petitioner, respondent mother's brother.
On 26 November 2005, respondent mother contacted a DSS social worker and reported that respondent father had been intoxicated two weeks earlier and that he had been stopped and cited for driving with a revoked license. Respondent mother, who had been following respondent father in another car, received a citation for resisting an officer and using profanity. Respondent mother indicated to the social worker that she saw nothing wrong with the incident.
On 20 December 2005, respondent mother contacted a DSS social worker and reported that respondent father was continuing to drink alcohol and that he had refused to give her money to attend her mental health appointments. Respondent mother told the social worker she was willing to leave respondent father in order to have her children returned to her. As of January 2006, however, respondent mother was still living with respondent father.
On 26 January 2006, respondent mother told petitioner, her brother, that respondent father was still drinking and physically abusing her. Respondent mother asked petitioner to contact the Sheriff's Department on her behalf to report that respondent father had hit her in the back of the head with a juice bottle. After petitioner made the report, a DSS social worker went with respondent mother to obtain a domestic violence protective order. Respondent mother filed the necessary complaint, but subsequently refused to proceed with the charges. Upon determining that this was the fourth time respondent mother had taken out such a complaint and then failed to prosecute, the trial court ordered respondent mother to pay court costs, jail fees, and interpreter fees.
On 8 February 2006, the trial court ordered DSS to cease reunification efforts with both parents. Respondent mother had reported that the January 2006 incident of *749 domestic violence was accidental, and she was not sure whether respondent father was intoxicated at that time. The trial court concluded that respondent mother had failed to demonstrate any learned knowledge regarding domestic violence and continued to minimize respondent father's alcohol use.
By the time of the 1 March 2006 permanency planning hearing, respondent mother had completed all eight mandatory sessions of domestic violence education and had restarted parenting classes. Although respondent mother was also continuing her mental health classes, the class facilitator expressed some doubt as to respondent mother's level of comprehension. Respondent father had completed the HALT program, but had been asked to repeat the class due to the January incident of domestic violence. Respondent father had not taken steps to restart that program.
At the 1 March 2006 permanency planning hearing, the trial court approved a permanent plan for the children of guardianship with their maternal uncle, petitioner. Subsequently, at an October 2006 permanency planning hearing, the trial court approved a visitation plan for respondents, and since then respondents have visited with the children at least monthly.
On 1 March 2007, petitioner filed petitions to terminate the parental rights of respondents to the children. Following the filing of those petitions, respondent father completed Family Pride classes on 26 March 2007, HALT domestic violence classes in April 2007, and parenting classes in June 2007. Respondent father had originally been asked to attend these classes in 2005. Respondents also continued to attend counseling with James Barbee, who first saw them in August 2006. The counselor reported at the termination of parental rights hearing that the couple was communicating better and that respondent father's substance abuse issues were "better." In addition, on 17 February 2008, respondent mother gave birth to a third child who resides with respondents.
Petitioner took a voluntary dismissal of the initial petitions for termination of parental rights on 3 April 2008 because of issues regarding service of the petitions on the juveniles. He then filed new petitions to terminate the parental rights of respondents on or about 4 April 2008.
In orders entered 9 January 2009with a separate order for each childthe trial court concluded that grounds existed to terminate respondents' parental rights under N.C. Gen. Stat. § 7B-1111(a)(2) (willfully leaving a child in placement outside of the home for more than 12 months without making reasonable progress in correcting the conditions that led to the removal of the child) and N.C. Gen. Stat. § 7B-1111(a)(7) (willful abandonment). The court then concluded that it was in the best interests of each child that respondents' parental rights be terminated. Respondents timely appealed to this Court.

Discussion
A termination of parental rights proceeding is conducted in two phases: (1) an adjudication phase that is governed by N.C. Gen.Stat. § 7B-1109 (2007) and (2) a disposition phase that is governed by N.C. Gen.Stat. § 7B-1110 (2007). In re Blackburn, 142 N.C.App. 607, 610, 543 S.E.2d 906, 908 (2001). During the adjudication stage, the petitioner has the burden of proving by clear, cogent, and convincing evidence that one or more of the statutory grounds for termination set forth in N.C. Gen.Stat. § 7B-1111 exist. The standard of appellate review is whether the trial court's findings of fact are supported by clear, cogent, and convincing evidence and whether the findings of fact support the conclusions of law. In re Huff, 140 N.C.App. 288, 291, 536 S.E.2d 838, 840 (2000), appeal dismissed and disc. review denied, 353 N.C. 374, 547 S.E.2d 9 (2001).
If the petitioner meets the burden of proving that grounds for termination exist, the trial court moves to the disposition phase and must determine whether termination of parental rights is in the best interests of the child. See N.C. Gen.Stat. § 7B-1110(a). "We review the trial court's decision to terminate parental rights for abuse of discretion." In re Anderson, 151 N.C.App. 94, 98, 564 S.E.2d 599, 602 (2002). "A trial court may be reversed for abuse of discretion only upon a showing that its actions are `manifestly unsupported by reason.'" Davis v. Davis, *750 360 N.C. 518, 523, 631 S.E.2d 114, 118 (2006) (quoting Clark v. Clark, 301 N.C. 123, 129, 271 S.E.2d 58, 63 (1980)).

I
Respondent father argues that the trial court erred in failing to conduct a properly bifurcated hearing. According to respondent father, the trial court improperly heard all of the evidence pertaining to the grounds for termination and the children's best interests at the same time. It is well established, however, that "so long as the court applies the different evidentiary standards at each of the two stages, there is no requirement that the stages be conducted at two separate hearings." In re Shepard, 162 N.C.App. 215, 221, 591 S.E.2d 1, 6, disc. review denied sub nom. In re D.S., 358 N.C. 543, 599 S.E.2d 42 (2004).
This Court has also stressed that "since a proceeding to terminate parental rights is heard by the judge, sitting without a jury, it is presumed, in the absence of some affirmative indication to the contrary, that the judge, having knowledge of the law, is able to consider the evidence in light of the applicable legal standard and to determine whether grounds for termination exist before proceeding to consider evidence relevant only to the dispositional stage." In re White, 81 N.C.App. 82, 85, 344 S.E.2d 36, 38, disc. review denied, 318 N.C. 283, 347 S.E.2d 470 (1986). Respondent father has not demonstrated that the trial court failed to apply the appropriate evidentiary standards in either stage of the proceedings. Accordingly, this assignment of error is overruled.

II
Respondent father next contends that the trial court erred in admitting "considerable hearsay testimony" over respondent father's objection. In his brief on appeal, however, he challenges only two pieces of evidence, both involving a DSS social worker's testimony regarding information contained in DSS' records:
The record reflects the medical personnel did not feel [respondent mother's] accounting of her injuries [when she lacerated her arm] were consistent with the actual injuries due to the extent of the damage repaired and that there were concerns that the injury may have been a result of domestic violence.
....
... On June 5th of '05, uh, [respondent father] engaged in physical altercation with a male friend, allegedly assaulted [respondent mother] and another female on that date, and the Selma Police were contacted and they reported observing [respondent father] intoxicated on at least two occasions that day.
Even assuming arguendo that this testimony constituted inadmissible hearsay, respondent father has failed to show that he was harmed by the admission of this testimony.[2] It is well established that "even when the trial court commits error in allowing the admission of hearsay statements, one must show that such error was prejudicial in order to warrant reversal." In re M.G.T.-B, 177 N.C.App. 771, 775, 629 S.E.2d 916, 919 (2006).
With respect to the first piece of testimony regarding the statements of medical personnel, the trial court made the following finding of fact: "Medical personnel reported [respondent mother's] account of her injuries was not consistent with the actual injury and a family assessment was initiated." This finding is not, however, solely supported by the challenged DSS social worker testimony. In addition, in the order adjudicating the children neglected, the trial court found regarding respondent mother's lacerated arm: "Both the social worker in the hospital and the hospital personnel had concerns that the injury had been the result of something other *751 than the story given by the mother. Both [respondent father] and [respondent mother] deny that the injury was the result of domestic violence and indicated that the mother had gone to the bathroom after a verbal argument and punched the mirror on the medicine cabinet resulting in her injury."[3]
"Where there is competent evidence to support the court's findings, the admission of incompetent evidence is not prejudicial." In re McMillon, 143 N.C.App. 402, 411, 546 S.E.2d 169, 175, disc. review denied, 354 N.C. 218, 554 S.E.2d 341 (2001). Consequently, since the trial court's finding is supported by the adjudication order, and respondent father has pointed to no other prejudice from the admission of the social worker's testimony, we hold that respondent father has failed to demonstrate prejudice from the admission of the social worker's testimony regarding the statements of hospital personnel.
With respect to the testimony regarding the 5 June 2005 altercation, the trial court found: "On or about June 5, 2005 the police department of the Town of Selma, North Carolina were [sic] notified of a physical altercation between [respondent father], another man, [respondent mother] and another female. The Selma Police Department reported [respondent mother] was intoxicated on at least two occasions on that day." In the adjudication order, the trial court found "[o]n or about June 5, 2005, [respondent father] engaged in a physical altercation with a male friend ...."[4] While this earlier finding does not fully support the finding in the termination of parental rights order, respondent father has not explained in what way heas opposed to respondent motherwas prejudiced by the remaining portions of the finding that respondent mother and another female were somehow involved in the physical altercation and respondent mother had been intoxicated on at least two occasions on that day. Accordingly, respondent father has also not demonstrated prejudice as to this part of the DSS social worker's testimony.

III
Respondents next challenge the trial court's determination that grounds existed under N.C. Gen.Stat. § 7B-1111 for termination of their parental rights. The trial court concluded that two grounds for termination existed. First, the trial court relied upon N.C. Gen.Stat. § 7B-1111(a)(2), which authorizes termination if "[t]he parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." The court then also found that grounds for termination existed under N.C. Gen.Stat. § 7B-1111(a)(7), which authorizes termination if the court finds that "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion."
Respondent father initially argues that the trial court's findings of fact regarding respondents' history with DSS through the date of the order awarding guardianship to petitioner are matters "simply not relevant to the question present before the trial Court and now this Court." In support of this assertion, respondent father notes that "[t]he determinative issue is the fitness of the parent to care for the child at the time of the termination proceeding[,]" citing In re Ballard, 311 N.C. 708, 319 S.E.2d 227 (1984), an opinion addressing neglect under N.C. Gen. Stat. § 7B-1111(a)(1). Respondent father then argues based on this principle that "[a]t the time of the termination proceeding there was no evidence of current alcohol abuse. There was no evidence of current domestic violence. There was no evidence of current inadequate conditions at the home. There was no evidence to support the conclusions of *752 neglect or abandonment found by the trial court. Even if the past history is true, it simply does not bear in any way on the present questions discussed below as the Conclusions of Law. The present and the future are controlling, and in this case very promising."
The flaw in respondent father's argument is that the trial court did not base its decision on neglect under N.C. Gen.Stat. § 7B-1111(a)(1). The question instead is whether "(1) respondents `willfully' left the juvenile in foster care for more than twelve months, and (2) that each respondent had failed to make `reasonable progress' in correcting the conditions that led to the juvenile's removal from the home." In re Baker, 158 N.C.App. 491, 494, 581 S.E.2d 144, 146 (2003). Respondents' conduct during the time that the children were removed from their custody is relevant to determining whether they made reasonable progress and whether they acted willfully.
In this case, it is undisputed that at the time of the termination hearing, the juveniles had been out of the family home and placed either with relatives or in foster care for more than 31 months. It is also undisputed that in the year and a half immediately following the children's removal from their custody, respondents failed to take any steps toward correcting the conditions that led to their removal. The unchallenged findings of fact are that in 2005 and for a little over half of 2006, respondents failed to address their documented issues with domestic violence, alcohol abuse by respondent father, anger management, and inadequate parenting.[5]
The trial court acknowledged that respondents began attending counseling sessions in August 2006, several months after the children were placed in guardianship with petitioner. Petitioner filed petitions to terminate respondents' parental rights on 1 March 2007. As the trial court found, although respondent father had been asked in 2005 to participate in classes addressing the issues that led to the removal of the children, respondent father did not complete Family Pride classes until 26 March 2007, HALT domestic violence classes until April 2007, and parenting classes until June 2007.
The court then made the following pertinent findings of fact regarding respondents' progress:
34. The Court finds that the Johnston County Department of Social Services has been involved with the family consistently since the year 2005. The Court further finds that the evidence presented that since the year 2005 the mother has been unable to demonstrate the ability to maintain a home free from protective issues, even after completing numerous programs and groups to resolve said issues. The mother is not able to demonstrate any knowledge gained regarding domestic violence issues.
35. The Court finds as a fact that the parents have not successfully addressed any of the issues which led to the juvenile's removal. The court has considered evidence of changed conditions and determines that while the mother has previously completed the programs requested of her, she has not been able to demonstrate any knowledge gained as evidence of her resumption of the protective issues in the home and continues to deny any problems in the home as to domestic violence, alcohol consumption of [respondent father] or her parenting ability. The father has completed all of the programs or services requested of him to resolve the protective issues of the home, however, he continues to engage in excess alcohol consumption and incidents of domestic violence and physical altercations. The court further finds that neither parent has corrected the situations that led to the removal of the juveniles in the year 2005 at the time of the filing of this Petition to Terminate *753 Parental Rights. The court further finds that most of the conditions that occurred at the time of the removal have not been successfully resolved as of this date.
. . . .
37. The court finds that the mother has willfully left the juvenile in a placement outside the home since September, 2005 without showing to the satisfaction of the court any reasonable progress under the circumstances to correct the conditions that led to the removal of the juvenile; the mother continues to reside with the father and as late as the year 2006 incidents of domestic violence were still being reported between the father and mother; the mother did not begin counseling or complete the programs suggested by the Johnston County Department of Social Services until late in the year 2006 and the year 2007.
38. The court finds that the father has willfully left the juvenile in a placement outside the home since September, 2005 with[out] showing to the satisfaction of the court any reasonable progress under the circumstances to correct conditions that led to the removal of the juvenile; though the father completed HALT domestic violence program he was involved in another incident of domestic violence and was asked to repeat the program which he has failed to do; the father as late as January 2006 was involved in an altercation while intoxicated.

. . . .
41. The Court finds that there has not been a showing to the satisfaction of this Court that the progress made by the parents has been reasonable under the circumstances. The Court further finds that all available services have been provided to the parents.
(Emphasis added.)
These findings of fact, focusing on what occurred through early 2007, do not explain why the trial court reached its ultimate determination that the efforts made by respondent parents in 2006 through April 2008the date of the filing of the petition giving rise to the order on appealdid not amount to reasonable progress. While petitioner focuses on evidence of domestic violence and alcohol consumption in 2008, the trial court made no findings of fact regarding that evidence, but rather discussed only incidents that occurred in early 2006. Without findings regarding the reasonableness, adequacy, or inadequacy of the 2006 through 2008 efforts, this Court cannot determine that the trial court's conclusions are supported by its findings of fact.[6]
We do not agree with respondents, however, that the order below should be reversed outright. Their assertion that there is no evidence of domestic violence or alcohol abuse by respondent father in late 2007 or 2008 is incorrect. Petitioner testified that in late 2007 or early 2008, while respondent mother was pregnant with respondents' third child, she told petitioner that respondent father was still drinking, still calling her names, and still hitting her. In addition, petitioner testified that two weeks before the termination of parental rights hearing, respondent mother told him that she had gotten mad and kicked respondent father, causing his head to hit the wall. Respondent father then jumped up and hit her on the head. Respondent mother also told petitioner that "[s]he's got a knife, because she's tired [of] that m.-f.er beating on her." The 16-year-old daughter of petitioner's domestic partner heard this part of the conversation and corroborated the statements about the fight and the knife. Respondent also told petitioner that she had had a relationship with another man, who was the father of her baby, and she was leaving respondent father because he continued to drink and beat her up.
Respondent father argues that this testimony constitutes inadmissible hearsay. It is, of course, admissible against respondent mother as an admission. See N.C.R. Evid. 801(d). In any event, no objection on hearsay grounds was made by either parent at trial. Therefore, any objection has been waived, and the testimony must be considered *754 competent evidence. See In re Ivey, 156 N.C.App. 398, 403-04, 576 S.E.2d 386, 390 (2003) (holding that respondent parents waived claim that testimony constituted hearsay when they failed to object at trial on grounds of hearsay).
Petitioner contends that this evidence is sufficient to uphold the trial court's order. The trial court, however, made no specific findings regarding whether domestic violence and alcohol abuse were continuing after early 2006. It is the role of the trial court and not this Court to make findings of fact regarding the evidence.[7]See In re T.P., M.P., & K.P., ___ N.C.App. ___, ___, 678 S.E.2d 781, 787 (2009) ("We have little doubt after studying the record that there existed evidence from which the trial court could have made findings and conclusions to support its orders for termination of parental rights. Unfortunately, the skeletal orders in the record are inadequate to allow for meaningful appellate review."); In re B.G., ___ N.C.App. ___, ___, 677 S.E.2d 549, 552 (2009) ("Although there may be evidence in the record to support a finding that Respondent acted inconsistently with his custodial rights, it is not the duty of this Court to issue findings of fact.").
We also acknowledge that the trial court could have found that the progress made by respondents was not reasonable under the circumstances. See In re B.S.D.S., 163 N.C.App. 540, 545-46, 594 S.E.2d 89, 93 (2004) (upholding termination of parental rights when parent delayed one year in attending court-ordered classes, did not follow up on obligation to seek therapy until termination of parental rights petition was filed, and saw counselor only three weeks before hearing); In re Oghenekevebe, 123 N.C.App. 434, 437, 473 S.E.2d 393, 397 (1996) (affirming trial court's finding that respondent willfully left child in foster care and failed to show reasonable progress and pointing out that respondent mother had failed to make any progress in therapy "until her parental rights were in jeopardy"). Given the findings of fact, however, we would be speculating as to the trial court's rationale if we were to uphold the trial court's order on this basis.
Although the trial court's current findings of fact are insufficient to permit this Court to review its decision under N.C. Gen. Stat. § 7B-1111(a)(2), we must also consider its determination that grounds exist under N.C. Gen.Stat. § 7B-1111(a)(7). See In re P.L.P., 173 N.C.App. 1, 8, 618 S.E.2d 241, 246 (2005) (explaining that "where the trial court finds multiple grounds on which to base a termination of parental rights, and `an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds'" (quoting In re Clark, 159 N.C.App. 75, 78 n. 3, 582 S.E.2d 657, 659 n. 3 (2003))), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).
The trial court's findings of fact regarding abandonment include:
39. The mother has willfully abandoned the juvenile for the six month[s] preceding the filing of the petition; though the mother does visit the child on occasions, her visits are timed at her convenience and though the mother does occasionally bring the child some toys or clothes when she visits, the clothes many times are not the appropriate size; mother pays no child support on a regular basis.
40. The father has willfully abandoned the juvenile for the six month[s] preceding the filing of the petition; though the father does visit the child on occasions, his visits are timed at his convenience and though the father does occasionally bring the child some toys or clothes when he visits, the clothes many times are not the appropriate size; father pays no child support on a regular basis.
The trial court's other findings of fact relate to whether or not respondents addressed the conditions that led to the removal of their children. The only other finding of fact relevant to the issue of abandonment is the trial *755 court's finding that "[t]he mother and father visit with the juveniles at least monthly."
This Court has held that "[a]bandonment implies conduct on the part of the parent which manifests a willful determination to forego all parental duties and relinquish all parental claims to the child. The word `willful' encompasses more than an intention to do a thing; there must also be purpose and deliberation." In re Adoption of Searle, 82 N.C.App. 273, 275, 346 S.E.2d 511, 514 (1986) (internal citation omitted). "Whether a biological parent has a willful intent to abandon his child is a question of fact to be determined from the evidence." Id. at 276, 346 S.E.2d at 514. Further, this Court has found willful abandonment to exist "where a parent withholds his presence, his love, his care, the opportunity to display filial affection, and [willfully] neglects to lend support and maintenance." In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C.App. 230, 241, 615 S.E.2d 26, 33 (2005) (internal quotation marks omitted).
In light of the trial court's findings of fact that the parents visit with the children at least once a month and that they bring the children toys or clothes when they do visit, we must hold that the trial court erred in concluding that grounds for termination exist under N.C. Gen.Stat. § 7B-1111(a)(7). Even if, as the trial court found, the visits are timed for respondents' convenience, the clothes are frequently not the appropriate size, and respondents do not pay child support on a regular basis, those facts do not establish that respondents are withholding their presence, love, or care or that they have chosen to forego all parental duties and relinquish all parental claims. Accordingly, we hold that the trial court's conclusion based on N.C. Gen.Stat. § 7B-1111(a)(7) is not supported by the findings of fact.

Conclusion
We, therefore, vacate the decision below and remand for further findings of fact regarding N.C. Gen.Stat. § 7B-1111(a)(2). We leave to the discretion of the trial court whether to hear additional evidence. We reverse that portion of the order concluding that grounds exist for termination under N.C. Gen.Stat. § 7B-1111(a)(7). Because of our disposition of this appeal, we do not reach respondents' remaining arguments.
Reversed in part; vacated and remanded in part.
Judges HUNTER, JR. and BEASLEY concur.
NOTES
[1] The pseudonyms "Fred" and "Molly" have been used throughout the opinion to protect the children's privacy and for ease of reading.
[2] We do note, however, that the trial court's findings of fact related to the material contained in the challenged testimony appear to be explaining why DSS took certain actions. Thus, the trial court found that DSS asked the parents to place the children with an appropriate caretaker based on the lacerated arm issue, and DSS filed the neglect petitions shortly after the June 2005 altercation because the parents continued to participate in domestic violence disputes. See State v. Goblet, 173 N.C.App. 112, 117, 618 S.E.2d 257, 261 (2005) ("A statement which explains a person's subsequent conduct is an example of such admissible nonhearsay.").
[3] The trial court took judicial notice of the orders in the underlying juvenile files, and respondent father has not challenged the admission of those orders.
[4] The trial court, in the neglect hearing, refused to admit the police report from the Selma Police Department because no police officer was present to testify. As a result, the trial court made no further findings regarding the incident.
[5] Respondent mother argues that this Court is limited to considering only that evidence in the 12-month period immediately preceding the filing of the termination of parental rights petition. N.C. Gen.Stat. § 7B-1111(a)(2) was, however, amended eight years ago to eliminate the need for reasonable progress in "the prior 12 months." See In re C.L.C., K.T.R., A.M.R., E.A.R., 171 N.C.App. 438, 447, 615 S.E.2d 704, 709 (2005) ("The focus is no longer solely on the progress made in the 12 months prior to the petition."), aff'd per curiam in part, disc. review improvidently allowed in part, 360 N.C. 475, 628 S.E.2d 760 (2006).
[6] Indeed, we note that the statement in finding of fact 38 that the father failed to repeat the HALT domestic violence program appears to be inconsistent with finding of fact 31, in which the court found that the HALT domestic violence classes were completed in April 2007.
[7] Although the trial court did find generally that respondent father "continues to engage in excess alcohol consumption and incidents of domestic violence and physical altercations[,]" we cannot tell from reading the order, which references only incidents occurring in 2006, whether the court was referring to the statements that petitioner testified respondent mother made.