678 S.E.2d 781 (2009)
In the Matter of T.P., M.P., and K.P.
No. COA09-143.
Court of Appeals of North Carolina.
July 7, 2009.
*783 Stainback, Satterwhite, Burnette & Zollicoffer, PLLC, by Caroline S. Burnette, Henderson, for Petitioner-Appellee Warren County Department of Social Services.
Thomas B. Kakassy, P.A., by Thomas B. Kakassy, Gastonia, for Respondent.
Deana K. Fleming, Raleigh, for Guardian ad Litem.
BEASLEY, Judge.
Respondent appeals from an order terminating her parental rights of her minor children, K.P., M.P., and T.P. We reverse and remand.
In July 2006 the Warren County Department of Social Services (Petitioner) investigated a report that Respondent's children, T.P. and M.P., were neglected. Petitioner discovered that T.P. and M.P. were undernourished and improperly supervised, had poor hygiene, and lived in inadequate and unsanitary conditions. Respondent was a habitual substance abuser who was "addicted to illegal drugs such as cocaine[.]" Petitioner's efforts to assist Respondent with substance abuse treatment were unsuccessful, and on 1 September 2006 Petitioner filed petitions alleging that T.P. and M.P. were neglected and dependent juveniles, as defined in N.C. Gen.Stat. § 7B-101(9) and (15) (2007). On the same day, the trial court issued nonsecure custody orders and placed T.P. and M.P. in Petitioner's custody.
Following a hearing conducted 28 November 2006, the trial court adjudicated T.P. and M.P. neglected and dependent. The formal adjudication and disposition orders were entered in June 2007. The children remained in the legal and physical custody of Petitioner, and Respondent was ordered to cooperate with substance abuse treatment.
In March 2007, Respondent gave birth to K.P. On 13 March 2007 Petitioner filed a petition alleging that K.P. was neglected and dependent. The trial court entered a nonsecure custody order placing K.P. in Petitioner's custody. Following a hearing conducted 29 January 2008, the trial court entered an adjudication and disposition order adjudicating K.P. neglected and continuing custody of K.P. with Petitioner.
On 20 June 2008, Petitioner filed petitions for termination of Respondent's parental rights to K.P., M.P., and T.P. The petitions alleged that Respondent was a chronic substance abuser who had not complied with previous court orders. The petitions asserted that the juveniles were neglected and dependent, that it was reasonably probable that the neglect and dependency would continue if they were returned to Respondent's custody, and that Respondent had willfully left them in foster care for more than a year without making reasonable progress towards correcting the conditions which had led to the children's placement outside the home.
In October 2008, the trial court conducted a hearing on the termination petitions. At the hearing, Petitioner offered the testimony of Nyesha Cook, the social worker assigned to this case. Cook testified that Respondent was a substance abuser who tested positive for drugs on every occasion that she had submitted to a drug test. Respondent had not complied with her case plan. Respondent did not cooperate with drug treatment, did not complete a parenting class or attend vocational training, and did not obtain suitable housing. Cook testified that Respondent had made no progress in correcting the problems that had led to the children being removed from her care. Following the hearing, the trial court on 23 October 2008 entered orders terminating Respondent's parental rights of K.P., M.P. and T.P. Respondent appeals these termination orders.
Respondent first argues that the trial court lacked subject matter jurisdiction to terminate her parental rights in M.P. and *784 T.P. Although the absence of subject matter jurisdiction over a proceeding in which the juveniles have been adjudicated neglected would deprive the court of jurisdiction over a termination proceeding. In re K.J.L, ___ N.C.App. ___, ___, 670 S.E.2d 269, 271 (2008), we conclude that no such defect exists here.
"`Subject matter jurisdiction involves the authority of a court to adjudicate the type of controversy presented by the action before it[,] ... [and] is conferred upon the courts by either the North Carolina Constitution or by statute.'" In re McKinney, 158 N.C.App. 441, 443, 581 S.E.2d 793, 795 (2003) (quoting Haker-Volkening v. Haker, 143 N.C.App. 688, 693, 547 S.E.2d 127, 130 (2001) and Harris v. Pembaur, 84 N.C.App. 666, 667, 353 S.E.2d 673, 675 (1987)). "Jurisdiction is the power of a court to decide a case on its merits; it is the power of a court to inquire into the facts, to apply the law, and to enter and enforce judgment." Jones v. Brinson, 238 N.C. 506, 509, 78 S.E.2d 334, 337 (1953) (citations omitted). "Subject matter jurisdiction cannot be conferred upon a court by consent, waiver or estoppel, and failure to demur or object to the jurisdiction is immaterial." Stark v. Ratashara, 177 N.C.App. 449, 451-52, 628 S.E.2d 471, 473 (2006) (citations omitted). "The issue of subject matter jurisdiction may be considered by the court at any time, and may be raised for the first time on appeal." In re T.B., J.B., C.B., 177 N.C.App. 790, 791, 629 S.E.2d 895, 896-97 (2006). "In reviewing a question of subject matter jurisdiction, our standard of review is de novo." In re K.A.D., 187 N.C.App. 502, 503, 653 S.E.2d 427, 428 (2007).
Under N.C. Gen.Stat. § 7B-200(a)(4) (2007), the "court has exclusive, original jurisdiction over any case involving a juvenile who is alleged to be abused, neglected, or dependent" and "also has exclusive original jurisdiction" over "[p]roceedings to terminate parental rights." Once "the court obtains jurisdiction over a juvenile, jurisdiction shall continue until terminated by order of the court or until the juvenile reaches the age of 18 years or is otherwise emancipated, whichever occurs first." N.C. Gen.Stat. § 7B-201(a) (2007). We conclude that the trial court was generally authorized to exercise jurisdiction over the type of case presented in this instance. However, "`a trial court's general jurisdiction over the type of proceeding or over the parties does not confer jurisdiction over the specific action.' `Thus, before a court may act there must be some appropriate application invoking the judicial power of the court with respect to the matter in question.'" In re A.B.D., 173 N.C.App. 77, 86-87, 617 S.E.2d 707, 714 (2005) (quoting In re McKinney, 158 N.C.App. at 444, 447, 581 S.E.2d at 795, 797) (other internal quotations omitted).
"The pleading in an abuse, neglect, or dependency action is the petition." N.C. Gen.Stat. § 7B-401 (2007). "A juvenile abuse, neglect, or dependency action is a creature of statute and `is commenced by the filing of a petition,' which constitutes the initial pleading in such actions." In re A.R.G., 361 N.C. 392, 397, 646 S.E.2d 349, 352 (2007) (citing N.C. Gen.Stat. § 7B-401, and quoting N.C. Gen.Stat. § 7B-405 [(2007)]). "A trial court's subject matter jurisdiction over all stages of a juvenile case is established when the action is initiated with the filing of a properly verified petition." In re T.R.P., 360 N.C. 588, 593, 636 S.E.2d 787, 792 (2006).
In the instant case, the trial court obtained subject matter jurisdiction over this matter on 1 September 2006, when Petitioner filed juvenile petitions alleging M.P. and T.P. were neglected and dependent juveniles. Respondent does not dispute that a properly verified petition was filed and a summons issued. Respondent's sole basis for challenging subject matter jurisdiction is her assertion that the court's initial temporary order for nonsecure custody, entered in September 2006, was improper. We disagree.
The criteria for the issuance of a nonsecure custody order are set out in N.C. Gen. Stat. § 7B-503 (2007), which provides in relevant part that:
(a) ... An order for nonsecure custody shall be made only when there is a reasonable factual basis to believe the matters alleged in the petition are true, *785 and ... (3) The juvenile is exposed to a substantial risk of physical injury or sexual abuse because the parent, ... has created the conditions likely to cause injury or abuse or has failed to provide, or is unable to provide, adequate supervision or protection[.] ... A juvenile alleged to be abused, neglected, or dependent shall be placed in nonsecure custody only when there is a reasonable factual basis to believe that there are no other reasonable means available to protect the juvenile....
The issuance of a nonsecure custody order is governed by N.C. Gen.Stat. § 7B-504 (2007), which provides, in pertinent part, that a nonsecure custody order "shall be in writing and shall direct a law enforcement officer or other authorized person to assume custody of the juvenile and to make due return on the order. A copy of the order shall be given to the juvenile's parent, guardian, custodian, or caretaker by the official executing the order." N.C. Gen.Stat. § 7B-506(a) (2007), states, in part, that a juvenile may not be "held under a nonsecure custody order for more than seven calendar days without a hearing on the merits or a hearing to determine the need for continued custody." In the instant case, Respondent does not allege that the criteria for nonsecure custody were not present, or that the trial court failed to follow the requirements of G.S. § 7B-504 and G.S. § 7B-506. However, Respondent asserts that the trial court's failure to state the specific basis for nonsecure custody in its temporary nonsecure custody order deprived the court of jurisdiction over the entire case. We disagree.
In its entry of an order for nonsecure custody, the trial court made use of a form provided by the Administrative Office of the Courts (AOC), AOC-J-150, "Order for Nonsecure Custody." This form order states in pertinent part that:
As grounds for the issuance of this Order, the Court finds that there is a reasonable factual basis to believe that the matters alleged in the petition are true, that there are no other reasonable means available to protect the juvenile, and: (check one or more)
Immediately following are six boxes corresponding to the statutory grounds for nonsecure custody set out in N.C. Gen.Stat. § 7B-503. In the instant case, none of these boxes is checked. The remainder of AOC-J-150 has been completed, including information about efforts made by Petitioner to avoid the need for nonsecure custody, instructions to the law enforcement officer serving the order, and information about the statutorily mandated hearing to determine the need for continued nonsecure custody.
As discussed above, entry of an order for nonsecure custody is governed by N.C. Gen. Stat. § § 7B-500-506, and the criteria for issuance of a nonsecure custody order are set out in G.S. § 7B-503. However, these statutes do not require the trial court to make any specific written findings. In In re E.X.J., ___ N.C.App. ___, ___, 662 S.E.2d 24, 27 (2008), aff'd, 363 N.C. 9, 672 S.E.2d 19 (2009), the trial court entered a nonsecure custody order that "did not assert a basis for jurisdiction[.]" However, in its adjudication order and order for termination of parental rights, the trial court made findings of fact that supported the court's exercise of subject matter jurisdiction. This Court held:
These findings establish a basis for emergency jurisdiction. It is immaterial to the question of the trial court's subject matter jurisdiction in granting nonsecure custody to DSS that the trial court did not make the necessary findings.
In In re L.B., 181 N.C.App. 174, 639 S.E.2d 23 (2007), the Respondent argued that the trial court lacked subject matter jurisdiction to issue a permanency planning order on the grounds that the original nonsecure custody order was entered before the juvenile petition was signed and verified. This Court again held that it is the petition, and not the temporary nonsecure custody order, that determines the existence of jurisdiction:
In this case, the order for nonsecure custody was filed 17 August 2004 and summons was issued 18 August 2004. However, the juvenile petition was not signed and verified until 19 August 2004. Therefore ... the trial court did not have jurisdiction when the order for nonsecure custody was filed and summons was issued.... [T]he *786 juvenile petition was eventually signed and verified by a DSS representative. Once this occurred on 19 August 2004, the trial court gained subject matter jurisdiction and could properly act on this matter from that day forward. Therefore, the trial court had authority to enter its permanency planning order.
Id. at 187, 639 S.E.2d at 29. We conclude that the trial court's failure to complete AOC-J-150 did not deprive the court of subject matter jurisdiction to enter a termination order. This assignment of error is overruled.
Respondent also argues that the court committed reversible error by failing to include adequate findings of fact and conclusions of law in its orders for termination of parental rights. We agree.
"`The standard of review in termination of parental rights cases is whether the findings of fact are supported by clear, cogent and convincing evidence and whether these findings, in turn, support the conclusions of law.'" In re Shepard, 162 N.C.App. 215, 221-22, 591 S.E.2d 1, 6 (2004) (quoting In re Clark, 72 N.C.App. 118, 124, 323 S.E.2d 754, 758 (1984)). "[A] proper finding of fact requires a specific statement of the facts on which the rights of the parties are to be determined, and those findings must be sufficiently specific to enable an appellate court to review the decision and test the correctness of the judgment." Quick v. Quick, 305 N.C. 446, 451, 290 S.E.2d 653, 657 (1982). "The trial court's `conclusions of law are reviewable de novo on appeal.'" In re D.H., C.H., B.M., C.H. III, 177 N.C.App. 700, 703, 629 S.E.2d 920, 922 (2006) (quoting Starco, Inc. v. AMG Bonding and Ins. Servs., 124 N.C.App. 332, 336, 477 S.E.2d 211, 215 (1996)).
N.C. Gen.Stat. § 1A-1, Rule 52(a)(1) (2007) states that:
(1) In all actions tried upon the facts without a jury or with an advisory jury, the court shall find the facts specially and state separately its conclusions of law thereon and direct the entry of the appropriate judgment.
Rule 52 applies to termination of parental rights orders. See e.g., In re O.W., 164 N.C.App. 699, 702, 596 S.E.2d 851, 853 (2004) ("trial court must, through `processes of logical reasoning,' based on the evidentiary facts before it, `find the ultimate facts essential to support the conclusions of law'") (quoting In re Harton, 156 N.C.App. 655, 660, 577 S.E.2d 334, 337 (2003)). "`[W]hile Rule 52(a) does not require a recitation of the evidentiary and subsidiary facts required to prove the ultimate facts, it does require specific findings of the ultimate facts established by the evidence, admissions and stipulations which are determinative of the questions involved in the action and essential to support the conclusions of law reached.'" In re Anderson, 151 N.C.App. 94, 97, 564 S.E.2d 599, 602 (2002) (quoting Quick, 305 N.C. at 451, 290 S.E.2d at 657).
In the instant case, the trial court entered three essentially identical orders for termination of Respondent's parental rights of K.P., M.P., and T.P. The orders consist mainly of quotations from the statutory grounds for termination of parental rights and conclusory recitation of the statutory standard for termination. However, the trial court failed to set out the specific facts that require termination of this Respondent's parental rights. For example, the orders state that Petitioner made reasonable efforts to reunite Respondent and the children, that Respondent failed to comply with the Court's reunification efforts, and that the Respondent willfully left her children in foster care for more than twelve months without making adequate progress in addressing the conditions that had led to their removal from her home. However, the orders do not state whether reunification efforts were undertaken, the manner by which Respondent failed to comply with Petitioner's and the trial court's efforts, the conditions that led to the removal of the children from Respondent's home, or in what respect Respondent failed to make progress addressing these conditions. The termination orders refer several times to Respondent's substance abuse problems, but provide no details about her drug use or any rehabilitation that was offered or *787 attempted. The orders do not include facts about Petitioner's case plan, Respondent's family or work history, her visitation with the children, or her housing situation.
We have little doubt after studying the record that there existed evidence from which the trial court could have made findings and conclusions to support its orders for termination of parental rights. Unfortunately, the skeletal orders in the record are inadequate to allow for meaningful appellate review. We conclude that the termination of parental rights orders must be
Reversed and Remanded.
Judges HUNTER, JR. and ERVIN concur.