IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-1

No. 213A20

Filed 5 February 2021

IN THE MATTER OF: C.L.H.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 22 January 2020 by Judge Christy E. Wilhelm in District Court, Cabarrus County. This matter was calendared for argument in the Supreme Court on 6 January 2021 but determined on the record and brief without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*No brief for petitioner-appellee mother.*

*No brief for appellee Guardian ad Litem.*

*Anné C. Wright for respondent-appellant father.*

EARLS, Justice.

¶ 1    Respondent appeals from the trial court's order terminating his parental rights to C.L.H. (Cash).[1] After careful review, we conclude that this case is in large part controlled by *In re K.N.*, 373 N.C. 274, 837 S.E.2d 861 (2020), necessitating that we reverse in part and vacate and remand in part.

¶ 2    Respondent is the biological father of Cash, and petitioner is Cash's biological

---

[1] A pseudonym is used in this opinion to protect the juvenile's identity and for ease of reading. *See* N.C. R. App. P. 42(b)(1).

mother. Cash was born in 2009 following a brief relationship between respondent and petitioner. Respondent and petitioner never married. On 19 August 2011, respondent and petitioner entered into a parenting agreement by which petitioner was granted primary custody of Cash, and respondent was granted visitation. Respondent and petitioner also entered into a child support consent order by which respondent agreed to pay petitioner $433 per month and fifty percent of any uninsured medical bills after the first $250 was paid by petitioner. However, neither the facts alleged in the termination petition and admitted in the answer nor the trial court's factual findings indicate whether the child support consent order was in effect during the year preceding the filing of the termination petition. The last known contact between respondent and Cash was in April 2018.

¶ 3     On 1 May 2018, the trial court held a hearing after petitioner filed a motion in the cause for modification of custody and to hold respondent in contempt. Petitioner stated that she filed the motion because of concerns she had regarding events that occurred during Cash's visitation with respondent. Specifically, petitioner testified that Cash was visiting respondent on 25 February 2018 when she received a phone call claiming that she needed to pick up Cash because respondent had a medical issue. At the time, respondent was living in a camper behind his parents' home, and Cash would stay in the grandparents' home while visiting with respondent. When petitioner arrived at the grandparents' home, she found that respondent had been

taken to the hospital. Petitioner testified that she went into respondent's camper to retrieve Cash's belongings and that it was "smoky" and smelled "chemically." On 13 June 2018, the trial court entered an order in which it found as fact that Cash found respondent unresponsive and sought help because respondent was "overdosing on heroin." The trial court found respondent to be unfit to provide for Cash's physical, emotional, and financial well-being and granted petitioner sole physical and legal custody of Cash. The trial court also terminated respondent's visitation with Cash.

¶ 4 On 30 January 2019, petitioner filed a petition to terminate respondent's parental rights to Cash. Petitioner alleged that grounds existed to terminate respondent's parental rights for neglect, willful failure to pay child support, dependency, and willful abandonment. N.C.G.S. § 7B-1111(a)(1), (4), (6)–(7) (2019). On 10 April 2019, respondent filed an answer in which he opposed the termination of his parental rights. On 22 January 2020, the trial court entered an order in which it determined grounds existed to terminate respondent's parental rights pursuant to N.C.G.S. § 7B-1111(a)(1), (4), and (6). The trial court further determined that it was in Cash's best interests that respondent's parental rights be terminated. Respondent appeals.

¶ 5 Respondent argues that the trial court erred by concluding that grounds existed to terminate his parental rights. "Our Juvenile Code provides for a two-step process for termination of parental rights proceedings consisting of an adjudicatory

stage and a dispositional stage." *In re Z.A.M.*, 374 N.C. 88, 94, 839 S.E.2d 792, 796–97 (2020) (citing N.C.G.S. §§ 7B-1109, -1110 (2019)). "At the adjudicatory stage, the petitioner bears the burden of proving by 'clear, cogent, and convincing evidence' the existence of one or more grounds for termination under section 7B-1111(a) of the General Statutes." *In re A.U.D.*, 373 N.C. 3, 5–6, 832 S.E.2d 698, 700 (2019) (quoting N.C.G.S. § 7B-1109(f) (2019)). We review a trial court's adjudication of grounds to terminate parental rights "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re E.H.P.*, 372 N.C. 388, 392, 831 S.E.2d 49, 52 (2019) (quoting *In re Montgomery*, 311 N.C. 101, 111, 316 S.E.2d 246, 253 (1984)). "The trial court's conclusions of law are reviewable de novo on appeal." *In re C.B.C.*, 373 N.C. 16, 19, 832 S.E.2d 692, 695 (2019).

¶ 6 In this case, the trial court determined that grounds existed to terminate respondent's parental rights based on neglect, willful failure to pay child support, and dependency. N.C.G.S. § 7B-1111(a)(1), (4), and (6). We begin our analysis with consideration of whether grounds existed to terminate respondent's parental rights for neglect, pursuant to N.C.G.S. § 7B-1111(a)(1).

¶ 7 A trial court may terminate parental rights where it concludes the parent has neglected the juvenile within the meaning of N.C.G.S. § 7B-101. N.C.G.S. § 7B-1111(a)(1). A neglected juvenile is defined, in pertinent part, as a juvenile "whose

parent, guardian, custodian, or caretaker does not provide proper care, supervision, or discipline; . . . or who lives in an environment injurious to the juvenile's welfare." N.C.G.S. § 7B-101(15) (2019).

> Termination of parental rights based upon this statutory ground requires a showing of neglect at the time of the termination hearing or, if the child has been separated from the parent for a long period of time, there must be a showing of past neglect and a likelihood of future neglect by the parent.

*In re D.L.W.*, 368 N.C. 835, 843, 788 S.E.2d 162, 167 (2016) (citing *In re Ballard*, 311 N.C. 708, 713–15, 319 S.E.2d 227, 231–32 (1984)). "When determining whether such future neglect is likely, the district court must consider evidence of changed circumstances occurring between the period of past neglect and the time of the termination hearing." *In re Z.V.A.*, 373 N.C. 207, 212, 835 S.E.2d 425, 430 (2019) (citing *In re Ballard*, 311 N.C. at 715, 319 S.E.2d at 232)).[2]

Here, Cash was not in respondent's custody at the time of the termination hearing and had not been since at least 13 June 2018, when the trial court awarded petitioner sole physical and legal custody of Cash. The last known contact between respondent and Cash was in April 2018, approximately 18 months before the

---

[2] As we have noted in our recent opinion in *In re R.L.D.*, No. 122A20, slip op. at 5 n.3 (N.C. Dec. 11, 2020), it is not necessary in every case that a petitioner make a showing of past neglect and of a probability of future neglect to support a determination that a parent's parental rights in a juvenile are subject to termination on the basis of neglect pursuant to N.C.G.S. § 7B-1111(a)(1). Such a determination is also permissible in the event that there is a showing of current neglect as defined in N.C.G.S. § 7B-101(15).

termination hearing. Additionally, because this case does not arise from involvement by the Department of Social Services, no petition alleging neglect was ever filed, and Cash was never adjudicated to be a neglected juvenile.

¶ 9 The sole finding of fact potentially supporting a conclusion that respondent had previously neglected Cash was finding of fact 17(a). In finding of fact 17(a), the trial court found that

> [r]espondent was unable to care for [Cash] during the February 2018 incident, whether it was due to a drug overdose or some other medical condition, for some period of time the child was not cared for and there does not appear that there was a proper plan in place for alternative care.

Respondent argues that the portion of finding of fact 17(a) which states that Cash was not cared for during the February 2018 incident is not supported by clear, cogent, and convincing evidence. We agree. The only evidence in the record concerning Cash's care during this incident was that he stayed in his grandparents' home when visiting with respondent, that his paternal grandfather was the person who called for help with respondent's medical issue, and that petitioner was called to pick up Cash from the grandparents' home. There was no evidence presented that Cash was not cared for during this incident. Accordingly, we disregard this portion of finding of fact 17(a). *See In re J.M.J.-J.*, 374 N.C. 553, 559, 843 S.E.2d 94, 101 (2020) (disregarding adjudicatory findings of fact not supported by clear, cogent, and convincing evidence).

¶ 10 We further note that the trial court's findings of fact, even if supported, shed

little light on how this incident, and the alleged absence of care, impacted Cash. *See In re K.L.T.*, 374 N.C. 826, 831, 845 S.E.2d 28, 34 (2020) ("In order to constitute actionable neglect, the conditions at issue must result in 'some physical, mental, or emotional impairment of the juvenile or a substantial risk of such impairment.' " (citation omitted)). Further, assuming arguendo that the incident and alleged lack of care constituted prior neglect, the trial court did not find that there would be a likelihood of future neglect should Cash be returned to respondent's care, nor do the trial court's sparse findings of fact support such a conclusion. *See In re K.N.*, 373 N.C. at 282, 837 S.E.2d at 867 (stating that in light of the juvenile's prior adjudication of neglect and his resulting removal from the home, "we must evaluate whether there are sufficient findings of fact in the termination order to support the trial court's ultimate conclusion that there is a likelihood of future neglect by respondent"). Therefore, we hold the trial court erred by concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(1) to terminate respondent's parental rights.

We next consider whether the trial court properly concluded that grounds existed to terminate respondent's parental rights for dependency, pursuant to N.C.G.S. § 7B-1111(a)(6). A trial court may terminate parental rights based on dependency when "the parent is incapable of providing for the proper care and supervision of the juvenile, such that the juvenile is a dependent juvenile within the meaning of [N.C.G.S. §] 7B-101, and that there is a reasonable probability that the

incapability will continue for the foreseeable future." N.C.G.S. § 7B-1111(a)(6). A dependent juvenile is defined as "[a] juvenile in need of assistance or placement because (i) the juvenile has no parent, guardian, or custodian responsible for the juvenile's care or supervision or (ii) the juvenile's parent, guardian, or custodian is unable to provide for the juvenile's care or supervision and lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-101(9). The incapability under N.C.G.S. § 7B-1111(a)(6) "may be the result of substance abuse, intellectual disability, mental illness, organic brain syndrome, or any other cause or condition that renders the parent unable or unavailable to parent the juvenile and the parent lacks an appropriate alternative child care arrangement." N.C.G.S. § 7B-1111(a)(6). To adjudicate the ground of dependency, the trial court "must address both (1) the parent's ability to provide care or supervision, and (2) the availability to the parent of alternative child care arrangements." *In re K.R.C.*, 374 N.C. 849, 859, 845 S.E.2d 56, 63 (2020) (citation omitted).

¶ 12        Here, the sole express finding of fact made by the trial court regarding this statutory ground was that "the ground of dependency exists in that there was no proper plan for care of the minor child." Arguably, the trial court's finding of fact 17(a) concerning the February 2018 incident and the lack of an alternative plan of care for Cash was also related to this statutory ground. However, the trial court made no finding of fact, and there was no evidence presented, that at the time of the

termination hearing respondent suffered from any condition which rendered him incapable of providing proper care or supervision to Cash. The only evidence presented that possibly supported a conclusion that respondent was incapable of parenting Cash was the incident in February 2018, which occurred over 18 months prior to the termination hearing. *See In re Z.D.*, 258 N.C. App. 441, 452, 812 S.E.2d 668, 676 (2018) (holding that the evidence was insufficient to support termination of respondent's parental rights based on dependency where "[r]espondent's mental health and parenting abilities pertain[ed] more to the historic facts of the case that occurred at least a year prior to the hearing, and the order contain[ed] no specific findings regarding [r]espondent's condition, mental health, and alleged incapability at the time of the hearing"). Accordingly, we hold that the trial court erred by concluding that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(6) to terminate respondent's parental rights.

¶ 13          Finally, we consider the trial court's conclusion that grounds existed pursuant to N.C.G.S. § 7B-1111(a)(4) to terminate respondent's parental rights for his willful failure to pay for the child's care without justification. A trial court may terminate a parent's parental rights pursuant to this statutory ground when

> [o]ne parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and

education of the juvenile, as required by the decree or custody agreement.

N.C.G.S. § 7B-1111(a)(4). We agree with the Court of Appeals that, when seeking to terminate parental rights pursuant to this statutory ground, "petitioner must prove the existence of a support order that was enforceable during the year before the termination petition was filed." *In re I.R.L.*, 263 N.C. App. 481, 485, 823 S.E.2d 902, 905 (2019) (quoting *In re Roberson*, 97 N.C. App. 277, 281, 387 S.E.2d 668, 670 (1990)). When the trial court fails to make findings of fact "indicating that a child support order existed or that [the parent] failed to pay support 'as required by' the child support order," its findings are insufficient to support the conclusion that grounds for termination exist pursuant to N.C.G.S. § 7B-1111(a)(4). *Id.* at 486, 823 S.E.2d at 906.

¶ 14        In *In re I.R.L.*, the Court of Appeals concluded that the trial court's findings were insufficient to support a conclusion that the father's parental rights were subject to termination pursuant to N.C.G.S. § 7B-1111(a)(4). *Id.* The Court of Appeals noted that

> while both parties testified that a child support order was entered in December 2014 ordering [the] father to pay $50.00 per month in child support, the trial court's termination order [was] devoid of any findings indicating that a child support order existed or that [the f]ather failed to pay support "as required by" the child support order.

*Id.* Here, the trial court made no findings of fact that a child support order existed in

the year prior to the filing of the petition to terminate respondent's parental rights. Consequently, we conclude that the trial court's findings of fact are insufficient to support the termination of respondent's parental rights based on N.C.G.S. § 7B-1111(a)(4).

¶ 15 The dissent, urging affirmance of the trial court's decision, attempts to distinguish *In re I.R.L.* by pointing out that the trial court's order in that case was "devoid of any findings indicating that a child support order existed or that [the respondent] failed to pay support 'as required by' the child support order." *In re I.R.L.*, 263 N.C. App. at 486, 823 S.E.2d at 906. However, as discussed above, the trial court's order in the instant case is similarly deficient. The dissent also points to the fact that "the only evidence [in *In re I.R.L.*] supporting the existence of a child support order was the testimony of both parties." However, the source of the evidence, as opposed to its existence in the record, does not affect our decision on this issue. When reviewing an order terminating parental rights, our task as an appellate court is "to determine whether the findings are supported by clear, cogent and convincing evidence and the findings support the conclusions of law." *In re Z.A.M.*, 374 N.C. at 94, 839 S.E.2d at 797 (quoting *In re C.B.C.*, 373 N.C. at 19, 832 S.E.2d at 695). Just as in this case, the trial court in *In re I.R.L.* failed to find as a fact that a child support order existed, and that the respondent had violated it, despite the existence of evidence in the record that would have supported such a finding. *In re I.R.L.*, 263

N.C. App. at 486, 823 S.E.2d at 906. The source of that evidence, so long as it is clear, cogent, and convincing, is not relevant to our analysis. There is no material distinction between this case and *In re I.R.L.*

We note that here there appears to be evidence in the record which might support a conclusion that grounds existed to terminate respondent's parental rights pursuant to this statutory ground. First, petitioner alleged in the termination petition, and respondent admitted in his answer, that the parties had entered into a child support consent order.[3] Neither the allegation nor the admission, however, establish that the support order was in effect during the year prior to the filing of the termination petition. *See* N.C.G.S. § 7B-1111(a)(4) (permitting termination of parental rights if a parent has failed to pay support as required by a decree or custody agreement "for a period of one year or more next preceding the filing of the petition or motion"). Second, petitioner testified that there was a child support order in place at the time of the termination hearing.

Also on this ground, the trial court found as fact, and respondent does not dispute, that respondent "paid no support, whether child support or other monetary support for the benefit of the minor child since September 2015." Respondent does,

---

[3] The admitted allegation reads: "Within the same Cabarrus County file, the Petitioner and Respondent entered into a child support consent order wherein the Respondent agreed to pay the Plaintiff the sum of $433 per month and fifty percent (50%) of any uninsured medical bills after the first $250 is paid by the Petitioner."

however, argue that the trial court failed to make any findings of fact regarding whether his failure to pay support was willful, and, thus, the trial court's conclusion on this issue was not supported by its factual findings. It is not necessary to resolve this argument because we have determined that the trial court failed to make factual findings that respondent failed to pay for the care, support, and education of the juvenile within the year prior to the filing of the termination petition "as required by the decree or custody agreement." *See* N.C.G.S. § 7B-1111(a)(4). We note, however, that the existence of the child support order in effect at the relevant time, if it had been included in the factual findings, would support a conclusion that respondent had the ability to pay some portion of the cost of care for the juvenile. *In re J.D.S.,* 170 N.C. App. 244, 257, 612 S.E.2d 350, 358 (quoting *In re Roberson,* 97 N.C. App. 277, 281, 387 S.E.2d 668, 670 (1990)), *cert. denied*, 360 N.C. 64, 623 S.E.2d 584 (2005) ("In a termination action pursuant to this ground, petitioner must prove the existence of a support order that was enforceable during the year before the termination petition was filed. . . . Because a proper decree for child support will be based on the supporting parent's ability to pay as well as the child's needs, . . . there is no requirement that petitioner independently prove or that the termination order find as fact respondent's ability to pay support during the relevant statutory time period." (alterations in original)). Where, as in this matter, the "trial court's adjudicatory findings were insufficient to support its conclusion that termination of the parent's rights was

warranted, but the record contained additional evidence that could have potentially supported a conclusion that termination was appropriate," we "vacate[ ] the trial court's termination order and remand[ ] the case for further proceedings, including the entry of a new order containing findings of fact and conclusions of law addressing the issue of whether [the] ground for termination existed." *In re K.N.*, 373 N.C. at 284, 837 S.E.2d at 869.[4]

¶ 18    The dissent, urging the opposite result, argues that the trial court's findings of fact 11 and 17(c) were supported by the record and support the trial court's conclusion to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(4). However, neither those nor any of the other findings of the trial court establish the existence of a child support order at the relevant time. In arguing that the record evidence supports the result below, it appears that the dissent is conflating the record with the factual findings of the trial court. However, it is our role to review

---

[4] The dissent incorrectly suggests that on the question of whether a remand is necessary for factual findings, this case is controlled by *In re A.U.D.*, 373 N.C. 3, 10–11, 832 S.E.2d 698, 702–03 (2019). In that case, we declined to remand to the trial court for written findings on specific factors that the trial court must consider during the best interests phase of the proceeding. *In re A.U.D.*, 373 N.C. 3, 11, 832 S.E.2d 698, 703 (2019). Critically, N.C.G.S. § 7B-1110(a) does not require written findings as to each factor. *Id.* at 10, 832 S.E.2d at 703. Because the trial transcript demonstrated that the trial court had carefully considered each factor, satisfying the statutory requirement, we concluded that remand for written findings on each factor "would be an elevation of form over substance." *Id.* at 11, 832 S.E.2d at 703. In any case, even were we to adopt the dissent's view that written findings are never required for uncontested facts, the uncontested evidence in this case does not establish that a child support order was in place during the relevant time period—namely, the year preceding the filing of the termination petition. *See* N.C.G.S. § 7B-1111(a)(4).

the trial court's *factual findings* to determine whether they support the trial court's conclusions of law. *See, e.g.*, *In re E.H.P.*, 372 N.C. at 392, 831 S.E.2d at 52. As the Court of Appeals has stated, "[i]t is the role of the trial court and not [the appellate court] to make findings of fact regarding the evidence." *In re F.G.J.*, 200 N.C. App. 681, 693, 684 S.E.2d 745, 754 (2009); *see also In re K.N.*, 373 N.C. at 283, 837 S.E.2d at 868 (rejecting argument of petitioner that evidence in the record supported affirmance of trial court's ultimate conclusions and instead looking to "the trial court's actual findings").

¶ 19        This principle has long been followed by our courts. As Justice Exum explained forty years ago:

> The purpose of the requirement that the court make findings of those specific facts which support its ultimate disposition of the case is to allow a reviewing court to determine from the record whether the judgment–and the legal conclusions which underlie it–represent a correct application of the law. The requirement for appropriately detailed findings is thus not a mere formality or a rule of empty ritual; it is designed instead "to dispose of the issues raised by the pleadings and to allow the appellate courts to perform their proper function in the judicial system."

*Coble v. Coble*, 300 N.C. 708, 712, 268 S.E. 2d 185, 189 (1980) (quoting *Montgomery v. Montgomery*, 32 N.C. App. 154, 158, 231 S.E.2d 26, 29 (1977) and citing *Crosby v. Crosby,* 272 N.C. 235, 158 S.E. 2d 77 (1967)). In deciding whether a trial court's award of alimony followed the requirements of applicable statutes, this Court explained:

> The requirement of special fact-finding did not begin with

implementation of our present Rules of Civil Procedure. In *Martin v. Martin,* 263 N.C. 86, 138 S.E. 2d 801 (1964) (per curiam), this Court reviewed a trial court order which directed alimony *pendente lite* and child support payments. The trial court made only limited findings of [fact] about the defendant's financial circumstances. The hearing had been on affidavits and defendant submitted his own uncontradicted affidavit indicating his dire financial situation. However, no findings of fact concerning the matters in the affidavit were made. This Court stated, in remanding to the trial court:

> If the facts set out in defendant's affidavit are true, the payments required of defendant are clearly excessive, unrealistic and beyond the limits of judicial discretion. *The court made no specific findings with respect to the matters set out in the affidavit, and it does not appear whether they were considered.* 263 N.C. at 87–88, 138 S.E. 2d at 802 (emphasis added).

*Quick v. Quick,* 305 N.C. 446, 452–53, 290 S.E.2d 653, 658 (1982). In the termination of parental rights context, this has long been the rule as well. *See, e.g., In re T.P.,* 197 N.C. App. 723, 730, 678 S.E.2d 781, 787 (2009) ("We have little doubt after studying the record that there existed evidence from which the trial court could have made findings and conclusions to support its orders for termination of parental rights. Unfortunately, the skeletal orders in the record are inadequate to allow for meaningful appellate review."); *In re B.G.,* 197 N.C. App. 570, 574, 677 S.E.2d 549, 552 (2009) ("Although there may be evidence in the record to support a finding that Respondent acted inconsistently with his custodial rights, it is not the duty of this Court to issue findings of fact."). The dissent's position would have us make factual

findings for the trial court on a fundamental and material fact, which is not how we have applied the standard of review in these cases. As we did recently in *In re K.N.,* and *In re N.D.A.,* we are compelled to remand for further factual findings on this ground. *See In re K.N.,* 373 N.C. at 284, 837 S.E.2d at 868; *In re N.D.A.,* 373 N.C. 71, 84, 833 S.E.2d, 768, 777 (2019).

In summary, the portions of the trial court's order concluding that respondent's parental rights were subject to termination under N.C.G.S. § 7B-1111(a)(1) and (6) are reversed. The portion of the trial court's order adjudicating grounds for termination under N.C.G.S. § 7B-1111(a)(4) is vacated and remanded for further proceedings not inconsistent with this opinion, including the entry of a new order containing findings of fact and conclusions of law addressing whether there was a child support order in place that was enforceable during the year before the termination petition was filed and the issue of whether respondent willfully failed to pay support for Cash without justification. The trial court may, in the exercise of its discretion, receive additional evidence on remand if it elects to do so. *See In re K.N.,* 373 N.C. at 285, 837 S.E.2d at 869.

REVERSED IN PART; VACATED AND REMANDED IN PART.

Justice BARRINGER dissenting.

Based on a review of the record, respondent-father did not preserve for appeal the issue of whether petitioner-mother proved the existence of a child support order to terminate respondent-father's parental rights under N.C.G.S. § 7B-1111(a)(4). Moreover, even if respondent-father had preserved the issue for appeal, the trial court's findings are sufficient to support the conclusion that grounds for termination existed pursuant to N.C.G.S. § 7B-1111(a)(4).

N.C.G.S. § 7B-1111(a)(4) states:

> (a) The court may terminate the parental rights upon a finding of one or more of the following:
>
> . . . .
>
> (4) One parent has been awarded custody of the juvenile by judicial decree or has custody by agreement of the parents, and the other parent whose parental rights are sought to be terminated has for a period of one year or more next preceding the filing of the petition or motion willfully failed without justification to pay for the care, support, and education of the juvenile, as required by the decree or custody agreement.

Here, respondent-father admitted that a child support order existed. Specifically, respondent-father admitted to the following allegation in his answer to petitioner-mother's petition for termination:

> Within [Cabarrus County File Number: 11-CVD-961], the Petitioner and Respondent entered into a child support consent order wherein the Respondent agreed to pay the Plaintiff the sum of $433 per month and fifty percent (50%) of any uninsured medical bills after the first $250 is paid

by the Petitioner.

Respondent-father never moved to amend his answer or otherwise present to the trial court any reason to disregard this admitted allegation. *See* N.C. R. App. P. 10(a)(1). It is well-established law in this state that an admission in an answer binds the answering party and renders the fact uncontested. *See Harris v. Pembaur*, 84 N.C. App. 666, 670 (1987) ("Facts alleged in the complaint and admitted in the answer are conclusively established by the admission." (citing *Champion v. Waller*, 268 N.C. 426 (1966))).

*In re I.R.L.*, 263 N.C. App. 481 (2019)[1] is incorrectly relied upon by respondent-father and the majority. On the contrary, the controlling precedent established by this Court is found in *In re A.U.D.*, 373 N.C. 3, 10–11 (2019), where this Court held that "a remand by this Court to the trial court for written findings on these uncontested issues—a disposition for which our dissenting colleague appears to be advocating—would be an elevation of form over substance and would serve only to delay the final resolution of this matter for the children." Affirming the trial court's termination of parental rights in this case does not involve improperly finding facts that a child support order exists, as the majority contends. Here, the fact of the

---

[1] While the majority relies on this decision from the Court of Appeals, it is worth noting that decisions from the Court of Appeals are only persuasive, not binding authority on this Court in cases not previously adopted.

existence of a child support order is uncontested by respondent-father's admission in his answer to petitioner-mother's allegation in her petition for termination.[2] To remand this case and direct the trial court to make findings of fact on a fact already uncontested by both parties is "an elevation of form over substance." *Id.*

¶ 26        Moreover, *In re I.R.L.* is distinguishable from the instant case. In that case, the "trial court's termination order [was] devoid of any findings indicating that a child support order existed or that [the f]ather failed to pay support 'as required by' the child support order," and the only evidence supporting the existence of a child support order was the testimony of both parties. *Id.* at 486.

¶ 27        In this case, the trial court determined that "[t]he Respondent-father paid no support, whether child support or other monetary support for the benefit of the minor child since September 2015, over four years next preceding the filing of this [termination]." Respondent-father did not challenge finding of fact 11 in the trial court's termination order. Unchallenged findings of fact are "deemed supported by

---

[2] Moreover, a review of the record indicates that the parties apparently considered the issue of whether there was a child support order to be settled. Petitioner-mother, in her testimony during direct examination responded that there was a child support order in place for the minor child. On cross examination of the petitioner-mother, the respondent-father's attorney did not question her regarding her testimony regarding the child support order. On direct examination, the respondent-father testified that he paid money in accordance with "the legal agreement we had."

competent evidence and are binding on appeal." *In re T.N.H.*, 372 N.C. 403, 407 (2019). Therefore, finding of fact 11 is binding on this Court.

¶ 28     Finding of fact 11 is also supported by sufficient evidence. Respondent-father admitted that "Petitioner[-mother] and Respondent[-father] entered into a child support consent order wherein the Respondent[-father] agreed to pay the [Petitioner-mother] the sum of $433 per month." The uncontroverted evidence showed that there was a child-support order in place for Cash, the biological child of petitioner-mother and respondent-father, and that the last payment respondent-father made was in September 2015.

¶ 29     The record additionally supports the trial court's finding of fact 17(c) that respondent-father willfully failed to pay child support. Respondent-father testified that he intentionally withheld financial support from Cash. Respondent-father testified that he was employed. When asked about his financial assistance after the 25 February 2018 incident and the loss of his visitation rights, respondent-father responded as follows: "I'm not going to give the money when I'm not even allowed to spend time with my son." Also, respondent-father did not give any justification for his failure to pay child support after the 25 February 2018 incident and admitted he was currently employed as a subcontractor and had worked as a contractor for most of his life. On this record, there is sufficient evidence to find that respondent-father had willfully and without justification failed to pay child support for four years.

Respondent-father argues that finding of fact 17(c) should be treated as a conclusion of law and raises that the trial court used the same language in its third conclusion of law. The majority seems to implicitly adopt this argument. However, a finding that an act is willful is determined by the trier of fact whether it be a jury or the trial court. *In re K.N.K.*, 374 N.C. 50, 53 (2020) ("The willfulness of a parent's actions is a question of fact for the trial court."); *see also Brandon v. Brandon*, 132 N.C. App. 646, 651 (1999) ("Where the trial court sits as the finder of fact, 'and where different reasonable inferences can be drawn from the evidence, the determination of which reasonable inference shall be drawn is for the trial [court].' " (alteration in original)). Plainly, the determination of whether a parent is acting willfully is a finding of fact and not a conclusion of law. *In re J.S.*, 374 N.C. 811, 818 (2020). Finding of fact 17(c) is therefore properly classified as a finding of fact in the trial court's termination order.

In conclusion, respondent-father's admission in his answer to petitioner-mother's allegation that he had entered into a consent child support order makes its existence an uncontested fact. Additionally, the trial court's findings of fact 11 and 17(c) were supported by sufficient evidence in the record and support the trial court's conclusion to terminate respondent-father's parental rights pursuant to N.C.G.S. § 7B-1111(a)(4) for willfully failing to pay child support without justification.

For these reasons, the decision of the trial court should be upheld on the ground

for termination pursuant to N.C.G.S. § 7B-1111(a)(4).[3] Accordingly, I respectfully dissent.

Chief Justice NEWBY and Justice BERGER join in this dissenting opinion.

---

[3] Since I would affirm the trial court's termination pursuant to N.C.G.S § 7B-1111(a)(4) and only one termination ground is required under N.C.G.S. § 7B-1111(a), it is unnecessary to reach the remaining grounds found by the trial court.